**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

Nancy Haney, Plaintiff,

vs.

FEDERAL NATIONAL MORTGAGE ASSOCIATION; BANK OF AMERICA, NA; THE CASTLE LAW GROUP, LLC, a Colorado Limited Liability Company; MEDVED DALE DECKER & DEERE, LLC, a Colorado Limited Liability Company; SETERUS, INC; WILMINGTON SAVINGS FUND SOCIETY, FSB, as Trustee for CARLSBAD FUNDING MORTGAGE TRUST; JANEWAY LAW FIRM, PC, a Colorado Professional Corporation; MORTGAGE ELECTRONIC REGISTRY SYSTEMS, INC; ROBERT FENSTEMAKER, an individual; JOHN W. HICKENLOOPER, Governor of the State of Colorado; DEE DEE COPPER, Chaffee County Public Trustee; DISTRICT COURT In and For the ELEVENTH JUDICIAL DISTRICT, State of Colorado; and DOES 1-100,

Defendants.

---

## COMPLAINT

---

COMES NOW the Plaintiff, Nancy Haney, through counsel, Gary D. Fielder, Esq., and for her claims against the Defendants, and each of them, states as follows:

1. The Plaintiff, Nancy Haney ("Ms. Haney"), brings this action for damages, injunctive relief and declaratory judgment after a series of bad faith foreclosures against her property brought by Bank of America, N.A., and Federal National Mortgage Association ("Fannie Mae"), through their different servicing agents, attorneys, successors and assigns, respectively, in Chaffee County District Court, Colorado, in relationship to a deed of trust executed by Ms. Haney under duress from Robert Fenstemaker ("Mr. Fenstemaker") as security for a promissory note signed by Mr. Fenstemaker in favor of Countrywide Bank, FSB.

## I. JURISDICTION

2. Jurisdiction of the Court is invoked under from Article III, Section 2 of The Constitution of the United States of America ("U.S. Constitution").

3. The Court has subject matter jurisdiction pursuant to the Supremacy Clause of the U.S. Constitution, wherein state laws or actions violating federal rights are invalid and subject to declaratory judgment. U.S. Const., Art. VI, cl. 2.

4. Ms. Haney's constitutional challenge to statutes of the State of Colorado are governed by Rule 5.1 of the Federal Rules of Civil Procedure.

5. Jurisdiction over the Defendants and their actions arise pursuant to 28 U.S.C. §§ 1331(a) (federal question), 1334, 1337(a), 1343(a), 1948, 1949 and 2201-02; and the 5th and 14th Amendments to the Constitution of the United States of America.

6. This Court has pendent jurisdiction over the statutory claims of violations of Colorado statutes, pursuant to this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a). This Court also has jurisdiction over the common law claims pursuant to this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a).

7. This Court is authorized to issue the preliminary and permanent injunctive relief requested under Rule 65 of the Federal Rules of Civil Procedure.

8. Jurisdiction of this Court in vindication of rights arises under 42 U.S.C § 1983, 1985, and 1988.

9. Venue is proper pursuant to 28 U.S.C. §1391(b), as each and all of the acts alleged herein were done by the Defendants within the District of Colorado.

## II. PARTIES

10. Plaintiff, Nancy Haney ("Ms. Haney"), is a natural person, and citizen of the United States of America and state of Colorado.

11. Defendant, FEDERAL NATIONAL MORTGAGE ASSOCIATION ("Fannie Mae"), is a government sponsored enterprise created by an Act of the United States Congress, codified at Title 12, United States Code, Section 1717, with a mission to provide liquidity, stability and affordability to the United States housing and mortgage markets. As part of this mission, Fannie Mae invested in residential mortgage-backed securities. Fannie Mae is organized and existing under the laws of the United States with its principal place of business at 3900 Wisconsin Ave., NW, Washington, DC 20016. Fannie Mae is a District of Columbia corporation. Fannie Mae conducts substantial business within Colorado, and owns real property across the state. Fannie Mae frequently utilizes the laws and courts of the State of Colorado, thereby subjecting itself to the laws and jurisdiction of the State of Colorado.

12. Defendant, BANK OF AMERICA, N.A., is a national banking association headquartered in Charlotte, North Carolina. BAC HOME LOANS SERVICING, L.P. ("BAC"), was a servicing company that had formerly been known as COUNTRYWIDE HOME LOANS SERVICING, L.P. BAC was a Texas limited partnership with its principal place of business in Plano, Texas. It was, for a time, a wholly owned subsidiary of BANK OF AMERICA, N.A. In July 2011, BAC was merged into BANK OF AMERICA, N.A. On April 23, 2009, the Office of the Comptroller of the Currency approved the request of COUNTRYWIDE BANK, FSB ("Countrywide"), to convert its charter back to that of a national bank, and the request by BANK OF AMERICA, N.A., to then

immediately acquire Countrywide by merger. These transactions were executed on April 27, 2009, as a result of which Countrywide ceased to exist. BANK OF AMERICA, N.A., was the surviving institution resulting from this merger. Thus, BANK OF AMERICA, N.A. is the successor in interest to Countrywide. Collectively the defendants identified in this paragraph are referred to here as “Bank of America,” unless otherwise individually mention for purposes of clarity.

13. SETERUS, INC., f/k/a IBM LENDER BUSINESS PROCESS SERVICES, INC, is a Delaware Corporation with a principle place of business located at 14523 SW Millikan Way, Beaverton, OR 97005. Seterus is registered to do business in Colorado as a foreign corporation with the Colorado Secretary of State with a registered agent for service of process listed as The Corporation Company, 1675 Broadway, Suite 1200, Denver, CO 80202.

14. WILMINGTON SAVINGS FUND SOCIETY, FSB (“Wilmington Savings”), is a federally regulated savings bank incorporated in Delaware with a principle place of business located at 500 Delaware Avenue, Wilmington, Delaware, 19801. Wilmington Savings is the oldest bank and trust company headquartered in Delaware and the primary subsidiary of WSFS Financial Corporation. In 2010, Wilmington Savings acquired Christiana Bank & Trust Company and integrated the trust division as part of Wilmington's Wealth Management division. Wilmington Savings is named in this action in its capacity as Trustee for CARLSBAD FUNDING MORTGAGE TRUST (“Carlsbad”), a Statutory trust registered in Delaware with its place of business located as care of Wilmington Savings, listed herein.

15. Defendant, THE CASTLE LAW GROUP, LLC, is a Colorado limited liability company, fka Castle Meinhold Stawiarski, LLC, and Castle Stawiarski, LLC ("Castle Group"), organized on December 20, 2002, with a principal place of business at 7100 East Belleview Avenue, Suite 350, Greenwood Village, Colorado 80111. It is, and at all relevant times was, regularly engaged in collecting, or attempting to collect, directly or indirectly, from Colorado consumers debts owed or asserted to be owed or due to Fannie Mae and others, including Bank of America.

16. Defendant, JANEWAY LAW FIRM, PC ("Janeway"), is a Colorado professional corporation organized on February 26, 2004, with a principal place of business at 9800 South Meridian Boulevard, Suite 400, Englewood, Colorado 80112. It is, and was at all relevant times, regularly engaged in collecting, or attempting to collect, directly or indirectly, from Colorado consumers debts owed or asserted to be owed by Fannie Mae and others, including Bank of America.

17. Defendant, MEDVED DALE DECKER & DEERE, LLC, ("Medved") is a Colorado limited liability corporation organized on October 23, 2012, with a principal place of business at 355 Union Blvd., Suite 250, Lakewood, CO 80228. It is, and was at all relevant times, regularly engaged in collecting, or attempting to collect, directly or indirectly, from Colorado consumers debts owed or asserted to be owed by Fannie Mae and others, including Seterus and Wilmington Savings.

18. Defendant, MORTGAGE ELECTRONIC REGISTRY SYSTEMS, INC. ("MERS"), is a Delaware Corporation with its principal place of business in Vienna, Virginia. MERS is a wholly owned subsidiary of MERSCORP, Inc., a Delaware Corporation.

19. Defendant, Robert Fenstemaker ("Mr. Fenstemaker"), is an individual and resident of the State of Colorado, with an address of 5627 S. Simms Way, Littleton, Colorado.

20. Defendant, Dee Dee Copper, is the public trustee and treasurer of Chaffee County, Colorado ("Public Trustee"), and is herein named in her official capacity.

21. Defendant, John W. Hickenlooper is the Governor of Colorado, is required to ensure that all the laws of the state are executed. COLO. CONST. art IV § 2. As Colorado's Chief Executive, Governor Hickenlooper is the proper party defendant to enjoin or invalidate a state statute.

22. Defendant, DISTRICT COURT In and For the ELEVENTH JUDICIAL DISTRICT, State of Colorado ("State District Court"), is a judicial district in the state of Colorado vested with general jurisdiction, pursuant to Article 4, Sections 1, 9 and 10 of the Constitution of the State of Colorado, and is presided over in Chaffee County by the Honorable Judge Patrick W. Murphy.

23. Does 1 – 100 are herein named as co-conspirators, agents, employees or contractors as their involvement is discovered though the course of this action.

## III. PENDING ACTION

24. A non-judicial foreclosure filed pursuant to Rule 120 of the Colorado Rules of Civil Procedure is currently pending in State District Court, referenced under case number 2015CV30044, and entitled:

> THE MATTER OF THE APPLICATION OF FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), FOR AN ORDER AUTHORIZING THE PUBLIC TRUSTEE OF THE COUNTY OF CHAFFEE, STATE OF COLORADO, TO SELL CERTAIN REAL PROPERTY UNDER A POWER OF SALE CONTAINED IN A DEED OF TRUST

## IV. CONSTITUTIONAL PROVISIONS

25. The Fifth Amendment provides, in pertinent part:

> No person shall…be deprived of life, liberty, or property, without due process of law…

U.S. Const. amend. V.

26. Section 1 of the Fourteenth Amendment provides, in pertinent part:

> No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

U.S. Const. amend. XIV.

## V. THE SCHEME

27. Ms. Haney is a 65-year old woman, who lives on property she has owned since 1996, in Chaffee County, Colorado.

28. Over a seven-year period, Bank of America, Fannie Mae, its attorneys and agents, have attempted to foreclose on Ms. Haney's property on five separate occasions.

29. Although by 2005, Ms. Haney owned the property outright, Mr. Fenstemaker fraudulently induced Ms. Haney to secure a loan for himself through the execution of a deed of trust against her property.

30. Through the process, Mr. Fenstemaker fraudulently induced Ms. Haney to quit claim half of her interest in her property to Mr. Fenstemaker for no consideration.

31. Thereafter, Mr. Fenstemaker refinanced the loan several times, finally signing a promissory note for $104,000 from Countrywide on February 8, 2008, entitled NOTE.

32. Ms. Haney, under duress and coercion from Mr. Fenstemaker, signed a deed of trust to again secure the NOTE with the property.

33. Mr. Fenstemaker had no intent to pay as prescribed by the terms of the NOTE.

34. At all relevant times, Mr. Fenstemaker's intent was to defraud Ms. Haney and strip the equity from the property to benefit himself.

35. In his loan application to Countrywide, Mr. Fenstemaker claimed the relevant property as his primary residence. This was a material misrepresentation during the acquisition process, which, with other misrepresentations, induced Countrywide to extend credit to Mr. Fenstemaker using the property as security.

36. In 2009, Mr. Fenstemaker filed a lawsuit in State District Court against Ms. Haney in an attempt to force sale of the property and receive half of the remaining proceeds, referenced under case number 2009CV0030.

37. Mr. Fenstemaker and Ms. Haney reached an agreement to sell the property. However, Ms. Haney retained the right to cure the impending default of the NOTE.

38. On or about December 10, 2010, Ms. Haney cured the resulting default.

39. Starting in 2009, Bank of America filed four separate foreclosures on the property over a five-year period claiming it was the holder of the NOTE.

40. In Colorado, whenever a holder of an evidence of debt declares a violation of a covenant of a deed of trust and elects to publish a property for sale, the holder is required to submit the original evidence of debt. C.R.S. § 38-38-101(1)(b).

41. In “lieu of the original evidence of debt, [the holder shall submit] one of the following:

> (I) A corporate surety bond in the amount of one and one-half times the face amount of the original evidence of debt;
>
> (II) A copy of the evidence of debt and a certification signed and properly acknowledged by a holder of an evidence of debt acting for itself or as agent, nominee, or trustee under subsection (2) of this section or a statement signed by the attorney for such holder, citing the paragraph of section 38-38-100.3(20) under which the holder claims to be a qualified holder and certifying or stating that the copy of the evidence of debt is true and correct and that the use of the copy is subject to the conditions described in paragraph (a) of subsection (2) of this section; or
>
> (III) A certified copy of a monetary judgment entered by a court of competent jurisdiction”

C.R.S. § 38-38-101(1)(b)(I)(II)&(III).

42. Thereafter, the holder of an evidence of debt is required to obtain an order authorizing sale “from a court of competent jurisdiction to issue the same pursuant to Rule 120 of the Colorado Rules of Civil procedure.” C.R.S. § 38-38-105.

43. Rule 120 C.R.C.P. 120(a) states, in pertinent part:

> **Motion; Contents.** Whenever an order of court is desired authorizing a sale under a power of sale contained in an instrument, any interested person or someone on such person's behalf may file a verified motion in a district court seeking such order. The motion shall be accompanied by a copy of the instrument containing the power of sale, shall describe the property to be sold, and shall specify the default or other facts claimed by the moving party to justify invocation of the power of sale.

44. Verified evidence of possession of the instrument establishes the standing of the holder and the subject matter jurisdiction of the state district court.

45. Although a qualified holder may proceed with a true and correct copy of the note as certified by the holder or its attorney, it still must be a “holder” of an evidence of debt, as that term is defined by statute.

46. C.R.S. § 38-38-100.3(10), states:

> (10) "Holder of an evidence of debt" or "holder" means the person in actual possession of or person entitled to enforce an evidence of debt; except that the term does not include a person acting as a nominee solely for the purpose of holding the evidence of debt or deed of trust as an electronic registry without any authority to enforce the evidence of debt or deed of trust. For the purposes of articles 37 to 40 of this title, the following persons are presumed to be the holder of an evidence of debt:
>
> (a) The person who is the obligee of and who is in *possession* of an original evidence of debt;
>
> (b) The person in *possession* of an original evidence of debt together with the proper indorsement or assignment thereof to such person in accordance with section 38-38-101(6);
>
> (c) The person in *possession* of a negotiable instrument evidencing a debt, which has been duly negotiated to such person or to bearer or indorsed in blank; or
>
> (d) The person in *possession* of an evidence of debt with authority, which may be granted by the original evidence of debt or deed of trust, to enforce the evidence of debt as agent, nominee, or trustee or in a similar capacity for the obligee of the evidence of debt. [emphasis added].

47. As the alleged holder in possession of the NOTE, it was incumbent upon Bank of America, Castle Group, Fannie Mae, Seterus, Medved and others to properly certify the evidence of debt pursuant to C.R.S. § 38-38-101(1)(b)(I)&(II).

48. In all four foreclosures filed against the property by Bank of America, its attorney, Castle Group, filed a copy of a copy of the NOTE with the Public Trustee and State District Court.

49. On each occasion, Bank of America was not in possession of the NOTE.

50. Instead, Castle Group, on behalf of Bank of America, submitted a copy of a copy of the NOTE with a statement from one its associate attorneys that Bank of

America was a qualified holder and that the copy attached was a "true and correct copy of the original evidence of debt."

51. The copy that was used was provided to Castle Group over electronic communication or mail, in what both Bank of America and Castle Group call the collateral file.

52. The copy of the note in the collateral file is a photocopy of the instrument at the time of closing.

53. In March 2012, the American Bar Association reported:

> A lawyer who formerly worked at Colorado's biggest foreclosure law firm says attorneys often filed foreclosure papers without ever seeing the original documents, probably resulting in foreclosure judgments in cases in which the plaintiff lenders actually had no legal right to the homes they obtained.
>
> Keith Gantenbein, 31…estimates that he and other lawyers who worked with him at Castle Stawiarski certified 'tens of thousands' of qualified holder statements without ever seeing original loan documents to determine whether the foreclosing lender was in fact the qualified holder.
>
> 'The discomfort was you had no way to verify the information they provided, and we found many bank errors, and you're not 100 percent sure you had the right to foreclose,' Gantenbein told the newspaper. 'It happened so frequently that there has to be a large percentage of homeowners who lost their homes to the wrong people.'
>
> He called the Colorado foreclosure process "one of blind faith."[a]

54. In each of the Haney foreclosures involving Bank of America, an attorney from Castle Group filed a statement of attorney for qualified holder with the Public Trustee to start the foreclosure. Attached to the signed document was a purported "true and correct copy of the original evidence of debt." However, the associate attorney would not have possession of the evidence of debt at the time of his or her statement.

---

[a] Martha Neil, *Lawyer Who Worked at Colo.'s Biggest Foreclosure Firm Says Legal Process Is Based on 'Blind Faith.* ABA Journal, March 13, 2012.

55. The associates of Castle Group were trained to attest to photocopies and scans as "true and correct copies of the original evidence of debt."

56. Often, another attorney in the firm would file the necessary court pleadings, which would include the first attorney's statement. C.R.C.P. 120 requires a motion for order authorizing sale to be verified and include "a copy of the instrument." In the Rule 120 pleadings, attorneys from Castle Group would swear that the listed party was the holder of the evidence of debt and that the copy submitted was true and correct. The filing attorney justified falsely swearing to the motion, having created a level of separation between the verified motion and statement of attorney filed with a public trustee.

57. Castle Group knew that the firms' procedures were faulty and unlawful. The firms' *modus operandi* was to hire young attorneys for a higher-than-average starting salary, and train them to expeditiously file the necessary pleadings.

58. The associate attorneys at Castle Group filed statements and motions in the public records and courts of every judicial district in the state of Colorado. Each knew or should have known that what they were doing was wrong. Ignorance of the law, particularly for attorneys, is no excuse. Even a layman would not swear that a copy was a reproduction of an original without having the real document in hand.

59. More problematic is the issue of standing, which a qualified holder does not have if, in fact, the entity was not the holder of an evidence of debt and misrepresented the authenticity of the most important document.

60. "Standing is determined as of the time the action is brought." *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

61. A lack of standing creates a want of subject matter jurisdiction in the district court.

62. An order made without subject matter jurisdiction is void *ab initio*.

63. The holder in actual possession would simply copy the instrument.

64. A lawyer has a higher standard and public duty to ensure that the copy submitted is true and correct.

65. Offering a false instrument for recording concerning real property is a felony in the state of Colorado.

66. Falsely making or uttering a written instrument is forgery in the state of Colorado, with no statute of limitations.

67. The public trustees and district courts across the sate of Colorado relied upon the foreclosure firms like Castle Group, Medved and others. In Colorado, there is a presumption of regularity. If filed properly, a Rule 120 hearing presumes standing, debt and default. The proceeding is strict and non-judicial in nature. Because of that, an order authorizing sale is not a final, appealable order. Counter-claims are not allowed, nor are defenses such as lack of consideration, duress, fraud in factum or failure to mitigate.

68. Although invalid, Bank of America through the Castle Group did obtain an order authorizing sale in 2012.

69. However, after Bank of America failed to effectuate the sale of the property, on October 1, 2015, Fannie Mae through Medved declared a breach of a covenant of the deed of trust and claimed it was the holder of the NOTE.

70. In the same manner as Castle, Medved filed a certification of qualified holder and attached a copy of a copy of the NOTE, signed under oath by an associate attorney, who did not have possession of the NOTE at the time of the certification.

71. As was established at a prior hearing involving Bank of America, the policy and procedure of both Castle and Medved was to seek possession of the evidence of debt only after a homeowner objected to the status of the foreclosing entity as the real party in interest.

72. In Colorado, standing to file a Rule 120 foreclosure requires possession of the instrument. Otherwise, a surety bond or judgment is required. A copy of a copy fails for lack of first-hand knowledge, and does not establish possession of an evidence of debt to confer standing.

73. "The provisions of Rule 120 must be strictly complied with by one seeking foreclosure under a power of sale through the public trustee." *Dew v. District Court*, 648 P.2d 662, 664 (Colo. 1982).

74. As Ms. Haney has experienced, the foreclosure statutes in Colorado create a unique barrier to due process through establishment of a separate class of person called a "qualified holder," which reduces the burden of proof to initiate and complete foreclosure sales on property owned by private citizens of the state of Colorado.

75. Fannie Mae is a government sponsored quasi-governmental entity.

76. Bank of America and Wilmington Savings are federal instrumentalities, created under the National Banking Act.

77. The chief executives of Bank of America and Wilmington Savings have all taken an oath of office as a condition of their banking charter.

78. At all relevant times, both Castle and Medved were government contractors on Fannie Mae's approved list of attorney service providers.

79. Seterus is a government contractor and exclusive servicer to Fannie Mae.

80. These entities illegally, intentionally and with notice of wrongdoing, conspired to divest Ms. Haney of the equity in her property, without injury or right.

81. Ms. Haney brings this action seeking lawful aid and protection from the actions of these entities and their agents, which have caused a direct, concrete and particularized injury to Ms. Haney that is imminent, ongoing and likely to continue without emergency and injunctive relief from this federal district court.

82. This complaint facially challenges the constitutionality of certain sections of Colorado's non-judicial foreclosure statutes that create a class of persons who are not required to submit the original evidence of debt to the public trustee before requesting pubic sale of a property under the powers contained in a deed of trust.

83. Ms. Haney seeks declaratory judgment that certain statutes indentified herein and enacted in the state of Colorado are unlawful, and in violation of the Constitution of The United States of America.

84. Ms. Haney brings this challenge to protect herself and others similarly situated from being injured by said statutes that create inequality in law, favor financial institutions and have caused a violation of Ms. Haney' rights.

## VI. GENERAL ALLEGATIONS

85. The Plaintiff hereby incorporates the allegations set forth in the proceeding paragraphs, as though fully contained herein.

86. Ms. Haney is an owner of certain land, coextensive real property and appurtenances located at 9095 County Road 120, Salida, Colorado ("Property"), legally described as:

> All that part of the South Half of the Southeast Quarter of the Southeast Quarter of the Southeast Quarter (S1/2 SE 1/4 SE 1/4 SE 1/4) and all that part of the South Half of the Southwest Quarter of the Southeast Quarter of the Southeast Quarter (S ½ SW 1/4 SE 1/4 SE 1/4) of Section 2, Township 49 North, Range 8 East of the New Mexico Principle Meridian, all lying South of Chaffee County Road 120, County of Chaffee, State of Colorado.

87. Said Property, coextensive real property and appurtenances are situated in Chaffee County, Colorado, United States of America.

88. On November 29, 1996, Ms. Haney and Steve Englert were granted the Property by Warranty Deed from Kenneth E. Englert, in consideration of $75,000, recorded with the Chaffee County Clerk and Recorder, at reception # 289269.

89. On December 11, 2001, Steve Englert granted his interest in the Property to Ms. Haney by Quitclaim Deed, recorded with the Chaffee County Clerk and Recorder, at reception # 346836.

90. On October 8, 2004, Ms. Haney executed a Quitclaim Deed, which purports to grant the Property to herself and Mr. Fenstemaker, for no consideration, recorded with the Chaffee County Clerk and Recorder, at reception # 346942.

91. On February 7, 2008, Mr. Fenstemaker tendered an instrument entitled NOTE to Countrywide, which contained a promise to pay Countrywide the principal amount of $107,500.00, plus interest.

92. On February 7, 2008, Ms. Haney, under duress and coercion from Mr. Fenstemaker, signed a deed of trust as security for the loan extended to Mr. Fenstemaker, recorded with the Chaffee County Clerk and Recorder, at reception # 373166.

93. The deed of trust names MERS as beneficiary under the Deed of Trust, acting solely as a nominee for the lender, Countrywide.

94. On or about August 10, 2009, BAC, through Castle Group by Attorney Jason Hilliard, initiated a non-judicial foreclosure with the Public Trustee, referenced under file #09-0057, by filing, among other things, a Foreclosure Referral, a Statement of Attorney for Qualified Holder Pursuant to 38-38-101, CRS, and an alleged copy of the original evidence of debt entitled NOTE (Ex. 1).

95. Attorney Hilliard represented that BAC was the holder of the original evidence of debt.

96. In his Statement of Attorney, Attorney Hilliard certified that a "true and correct copy of the original evidence of debt is attached hereto."

97. The copy of the evidence of debt attached to Attorney Hilliard's Statement of Qualified Holder was not a copy of the original NOTE.

98. Attorney Hilliard was not in possession of the original evidence of debt at the time of his statement.

99. The attached copy of the NOTE did not contain an endorsement.

100. On October 16, 2009, BAC, through Castle Group by Attorney Peter C. DeCamillis, filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120 in State District Court, referenced under Case No. 2009 CV 135.

101. Attorney DeCamillis attached the Statement of Qualified Attorney certified by Attorney Hilliard, along with the same copy of a copy of the NOTE.

102. Thereafter, on October 30, 2009, Castle Group filed a Withdrawal of Notice of Election and Demand for Sale by Public Trustee, Sale Number 09-0057, recorded with the clerk and recorder at reception number 384546.

103. On or about May 12, 2010, Castle Group, through Attorney Keith Gantenbein, initiated a second non-judicial foreclosure with the Public Trustee, referenced under file # 10-0039, by filing, among other things, a Foreclosure Referral, a Statement of Attorney for Qualified Holder Pursuant to 38-38-101, CRS, and an alleged copy of the original evidence of debt entitled NOTE (Ex. 2).

104. Attorney Gantenbein represented that the holder of the original evidence of debt was BAC.

105. In his Statement of Attorney for Qualified Holder, Attorney Gantenbein attested that a “true and correct copy of the original evidence of debt is attached hereto.”

106. The copy of the evidence of debt attached to Attorney Gantenbein’s Statement of Qualified Holder is a copy of a copy, and not a copy of the original instrument.

107. Attorney Gantenbein was not in possession of the original evidence of debt at the time of his statement.

108. The attached copy did not contain an endorsement.

109. On July 30, 2010, BAC, through Castle Group by Attorney Christopher Groen, filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120 in State District Court, referenced under Case No. 2010CV110.

110. Attorney Groen attached the Statement by Attorney for Qualified Holder signed by Attorney Gantenbein, along with the same copy of a copy the NOTE.

111. On November 12, 2010, Castle Group filed a Withdrawal of Notice of Election and Demand for Sale by Public Trustee, Sale Number 10-0039, and recorded with the clerk and recorder at reception number 390808.

112. Although the foreclosure had been withdrawn, Ms. Haney cured the default by payment in cash on or about December 10, 2010.

113. Thereafter, on January 21, 2011, Castle Group filed a motion to dismiss 2010CV110, which indicated that the Notice of Election Demand had been withdrawn.

114. Although Ms. Haney cured the default and brought the NOTE current, Mr. Fenstemaker continued to not make any payments on the NOTE.

115. On August 17, 2011, Alice Rowe, purporting to act as the authorized agent of MERS, executed an instrument, for value received, assigning the Deed of Trust to Bank of America "with the note(s) and obligation therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust," recorded with the clerk and recorder, under reception number 395466.

116. On January 30, 2012, Bank of America, through Castle Group, by Attorney Reagan Larkin, initiated a third non-judicial foreclosure with the Public Trustee, referenced under Public Trustee File # 12-0155, by filing, among other things, a Notice

and Election and Demand for Sale, and a Foreclosure Referral, Statement of Attorney for Qualified Holder Pursuant to 38-38-101, CRS, and an alleged copy of the original evidence of debt entitled Note (Ex. 3).

117. Attorney Larkin represented that the holder of the original evidence of debt was Bank of America.

118. In her Statement by Attorney for Qualified Statement, Attorney Larkin certified that a "true and correct copy of the original evidence of debt is attached hereto."

119. The copy of the evidence of debt attached to Attorney Larkin's Statement of Qualified Holder is a copy of a copy, and not a copy of the original instrument.

120. Attorney Larkin was not in possession of the original evidence of debt at the time of his statement.

121. The attached copy did not contain an endorsement.

122. On March 13, 2012, Attorney Gantenbein testified before the Colorado State House Economic and Business Development Committee regarding House Bill HB 1156.

123. The Denver Post reported:

> Mr. Gantenbein gave vivid testimony about how, while working for [Castle Group], the state's largest foreclosure law firm, he signed 'thousands' of documents—called statements of qualified holder—saying the bank had the right to foreclose when all he had was an email or uncertified copy of a loan. 'The law allowed me to foreclose on a property with just the stroke of my pen, whether this bank was the real party of interest or not,' said Gantenbein, who now represents homeowners fighting foreclosure."[b]

---

[b] David Migoya, *Colorado House Committee Kills Foreclosure Bill*, DENVER POST, March 13, 2012.

124. On April 6, 2012, Bank of America, through Castle Group by Attorney Allison Berry, filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120 in State District Court, referenced under Case No. 2012CV33.

125. Attorney Berry attached her own Statement By Attorney For Qualified Holder Pursuant to 38-38-101, C.R.S., along with the same copy of the NOTE, which had been previously submitted to the Public Trustee by Attorney Larkin to initiate the foreclosure.

126. The copy of the evidence of debt attached to Attorney Berry's Statement of Qualified Holder is a copy of a copy, and not a copy of the original instrument.

127. Attorney Berry was not in possession of the original evidence of debt at the time of her statement.

128. The attached copy did not contain an endorsement.

129. Thereafter, on May 1, 2012, Ms. Haney, *pro se*, filed her Motion to Vacate Order and Request of Stay/Injunction and for Extension of Time.

130. The Rule 120 hearing was then set to proceed on July 24, 2012.

131. On May 4, 2012, counsel for Ms. Haney entered his appearance on her behalf.

132. On May 4, 2012, Bank of America, through the Castle Group by Attorney Berry filed a motion for absentee testimony.

133. Attached to her motion, as Exhibit 1, was a copy of the Note, which contained an ink-stamped, blank endorsement from Countrywide, signed with the signature stamp of Laurie Meder, Senior Vice President, affixed to the face of the signature page of the NOTE.

134. At the Rule 120 hearing on July 3, 2012, Ms. Haney objected to the documents and brought the inconsistencies of the two tendered documents to the attention of the State District Court.

135. When asked by the State District Court to explain the discrepancies, Attorney Berry admitted:

> MS. BERRY: Your Honor, it may help for me just to explain briefly opposing counsel's – or to respond to opposing counsel's argument.
>
> The note that was essentially what's called forwarded into my client system, which is formerly known as Countrywide and is now is known as Bank of America, was the note that we went ahead and filed the foreclosure with. It's made out to Countrywide Bank. It's for the property located at 9095 County Road 120, Salida, Colorado 81201.
>
> We used 38-38-101. As a qualified holder, Bank of America has the opportunity and the right to file the copy of the document with the foreclosure. We filed a copy of the note along with the deed of trust in our verified motion for order authorizing sale.
>
> Once we became aware that respondent was objecting to a real party in interest argument, we obtained the original note that actually has an endorsement on it which is an open endorsement for Countrywide Bank FSB. And based on possession alone of that original note, the petitioner is entitled to proceed under CRCP 17(a).
>
> THE COURT: So where would the note that was filed with the complaint have been obtained from?
>
> MS. BERRY: Your Honor, that is sent to our office by our client at the initiation of the foreclosure proceedings. Colorado does not require an original evidence of debt to foreclose as long as a petitioner is a qualified holder, which Bank of America is under 38-38-101.
>
> At the time we became aware that respondent was alleging that Bank of America is not the proper party to have standing, we obtained the original note which is what the court is reviewing right now. And the only change to that is a stamp with an open endorsement.

<u>Reporter's Transcript (7/24/2012 Rule 120 Hearing)</u>, pp. 12-13, ll. 3-25,1-13 (Ex. 4).

136. During the hearing, Ms. Berry called Jennifer Bartholomew from Bank of America. On cross-examination, Ms. Bartholomew described how the foreclosure documents are submitted to counsel:

> Q: (By Counsel for Ms. Haney): Ms. Bartholomew, describe to me how the notes are transferred to counsel when you're initiating a foreclosure action?
>
> A: When we're initiating a foreclosure action, another department initiates the foreclosure action and they can request the documents be pulled from the repository and sent to foreclosure counsel.
>
> Q: Okay. So that the documents are physically taken from the depository and then sent to counsel?
>
> A: Correct.
>
> Q: Okay. And in this particular matter, Ms. Bartholomew, when was the note sent to counsel?
>
> A: I would have to check when the proceeding was filed. I would have to go through a couple of systems. If you want to hold, I can look.
>
> Q: Would you be looking for just when it was initiated or when actually the note was transmitted to counsel?
>
> A: I can look at to when it was initiated.
>
> Q: Okay, so you don't have any documentation on when it was sent to the counsel? Because I'm assuming and you can correct me if I'm wrong, I'm assuming you don't just send that normal mail; it's probably certified mail, because that's an important document; is that correct?
>
> A. That's correct. They're actually sent but it actually looks like we sent this one to Castle Stawiarski on 8/9/2010 and I see they were showing receipt from Castle Stawiarski on 8/9/2010.
>
> Q. And that's receipt of the physical note?
>
> A. Of the collateral file.

Reporter's Transcript (7/24/2012 Rule 120 Hearing), pp. 28-29, ll. 11-25, 1-16 (Ex. 4).

137. On redirect testimony, Ms. Bartholomew described what was contained in a collateral file:

> Q: And you had indicated on August 9, 2010 that there was a receipt from Castle Stawiarski, the law firm for Bank of America, back to Bank of America; is that correct?
>
> Q: (By Ms. Berry) You had indicated that the collateral file – will you just explain what the collateral file is briefly?
>
> A: The collateral file usually contains within the origination file, although it doesn't have to, but the collateral basically contains the bare bones of the documents signed at the closing being the note, the deed of trust, usually some disclosures, things of this nature.
>
> A: Yes, we sent the file to you on that date.
>
> Q: Okay, I was unclear. I just want to make sure that the court is aware that we are in possession of the original note at this time.
>
> A: Yes, that's correct. The last recording of the file (indecipherable) was receipt by your firm on August 9th, 2010 has not been anywhere else.

Reporter's Transcript (7/24/2012 Rule 120 Hearing), p. 38, ll. 1-20 (Ex. 4).

138. After the close of evidence, the state district court stated:

> THE COURT: Well, the court's going to grant the motion for sale. It's frustrating frankly to the court that we've got a situation here in which there are some questions with regard to the authenticity of the note, and there may be some problems with what's been filed with the Public Trustee, but if the court applies Rule 120, the scope of the hearing is pretty limited.
>
> There is a reasonable probability of default here. The testimony of Ms. Bartholomew is unrebutted and she does as part of her duties review the documents in these foreclosure actions and those included the payment history, and the payment history, exhibit three, demonstrates that no payments have been made since – I know nothing's been credited to account since November of 2010.
>
> There's no question regarding either of the parties being in the services so that the Civil Relief Act doesn't apply.
>
> It does appear that Bank of America, the note that was presented today may very well be the original note, although there are some questions.

> So the court's going to grant the motion reluctantly quite frankly. The fact that the statute hasn't been complied with in terms of evidence of what's been presented to the Public Trustee is not set forth as one of the grounds of the 120.
>
> So the court's not applying it at this point. There may be another action that would be appropriate for that.

Reporter's Transcript (7/24/2012 Rule 120 Hearing), pp. 56-57, ll. 14-25, 1-17 (Ex. 4).

139. On August 9, 2012, the State District Court in 2012CV33 issued an Order Authorizing Sale of the Property to Bank of America.

140. On August 15, 2012, Ms. Haney, filed a Complaint for Quiet Title Pursuant to C.R.C.P. 105 and an Emergency Motion for Injunctive Relief in the State District Court, referenced under 2012CV77.

141. On August 15, 2012, in 2012CV77 the State District Court issued an order enjoining the sale.

142. On April 6, 2013, counsel for Ms. Haney, the undersigned, Gary D. Fielder, Esq., delivered to the United States Department of Justice and the Colorado State Attorney General's Office his 21 page affidavit, along with the relevant documents of eleven cases (including Ms. Haney's), which outlined the unlawful conduct of certain foreclosure firms (including Castle Group and Medved) submitting copies of copies as copies of original negotiable instruments, pursuant to CRS § 38-38-101(1)(b)(II) (Ex. 5).

143. On May 21, 2013, in 2012CV77 the State District Court dissolved the injunction.

144. On July 3, 2013, Bank of America filed its Withdrawal of the Notice of Election and Demand with the Clerk and Recorder, concerning public trustee sale # 12-0155.

145. As of the filing of this complaint, Bank of America has not moved to dismiss 2012CV33.

146. On July 9, 2013, Bank of America filed a motion to dismiss 2012CV77.

147. On July 23, 2013, the State District Court dismissed the 2012CV77.

148. On February 4, 2014, Bank of America, through the Castle Group by Attorney Kimberly L. Martinez, #40351, initiated a fourth non-judicial foreclosure with the Chaffee County Public Trustee, referenced under Public Trustee File # 14-0239, by filing, among other things, a Foreclosure Referral and a copy of the NOTE (Ex. 6).

149. The copy of the NOTE included the blank endorsement from Countrywide, but was not accompanied by a statement of the holder pursuant to CRS § 38-38-101(1)(b)(II).

150. On or about April 10, 2014, Fannie Mae instructed its mortgage loan servicers to cease referrals of new cases to the Castle Group, and to transfer existing cases to other firms.

151. Nonetheless, on May 2, 2014, Bank of America, through the Castle Group by Attorney Cynthia Lowery-Graber, filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120 in State District Court, referenced under 2014CV30022 (Ex. 7).

152. Attorney Lowery-Graber attached a copy of the NOTE.

153. The copy of the evidence of debt attached to Attorney Lowery-Graber's verified motion is a copy of a copy, and not a copy of the original instrument.

154. The attached copy did not contain an endorsement.

155. On May 23, 2014, Bank of America transferred foreclosure case 2014CV30022 to Janeway.

156. On July 14, 2014, the Colorado Attorney General filed a civil action in Denver District Court against Castle Group, specifically outlining the "massive fraud" by Castle Group in its foreclosure cases since 2006, referenced under 2014CV32763.

157. In its Amended Complaint, the Colorado Attorney General averred:

> Defendants get away with this extensive fraud by taking advantage of the inherent lack of oversight in the foreclosure process. The mortgage servicers that hire the law firm on behalf of the loan's investor rely upon the law firm to perform all the legal work in the foreclosure for an agreed-upon flat attorney fee (the "maximum allowable fee") and to pass through only its actual, necessary, and reasonable costs. Servicers do not conduct market analyses of these foreclosure costs; rather, they rely on the law firm to comply with the law and investor guidelines by charging costs that are actual, reasonable, and the market rate.

*Amended Complaint*, 2014CV32763, Page 2, Para. 3.

> The law firm abuses this system, which it knows is devoid of administrative or judicial oversight, to charge whatever costs it can get away with in order to generate significant revenue beyond the maximum allowable fee.

*Amended Complaint*, 2014CV32763, Page 3, Para. 5.

> Operating with no checks and unrestrained by market principles by selling foreclosure services to themselves, the Castle Defendants, in concert with their affiliated vendors, charge between $350 to $1400 in unlawful costs per foreclosure by making false, misleading, and deceptive statements of costs to homeowners, servicers, investors, and the public on reinstatements, cures, bids, and invoices…

*Amended Complaint*, 2014CV32763, Page 7, Para. 20.

> The State, pursuant to its law enforcement authority under the Colorado Consumer Protection Act, §§ 6-1-101–115, C.R.S. (2013) (CCPA), the Colorado Antitrust Act of 1992, §§ 6-4-101-122, C.R.S. (2013) (Colorado Antitrust Act), and the Colorado Fair Debt Collection Practices Act, §§ 12-14-101–137, C.R.S. (2013) (CFDCPA), has sought to enjoin Defendants from engaging in deceptive and other unlawful practices, including charging inflated, deceptive, unauthorized, unlawful, and unreasonable costs in foreclosure proceedings in Colorado, to disgorge unjust proceeds, to completely compensate or restore to their original position any persons injured by Defendants' conduct, to recover statutory civil penalties...

*Amended Complaint*, 2014CV32763, Page 7, Para. 7.

158. On July 15, 2014, Bank of America, through Janeway by former counsel for Castle Group, Attorney Berry, filed its motion for absentee testimony in the State District Court matter, referenced under case number 2014CV30022.

159. Attached to its motion, as Exhibit 1, is a copy of a completely different Adjustable Rate Note dated February 23, 2007, in which Mr. Fenstemaker signed a promissory note for $90,000 to Home123 Corporation.

160. On August 12, 2014, Bank of America, through Janeway by Attorney Berry, filed a motion to dismiss the foreclosure case referenced under 2104CV30022. In her motion, Attorney Berry, stated:

> Upon a detailed review of this matter, it has been determined that the instant matter is moot because the previously granted Order Authorizing Sale from case number 2012CV33 remains valid in order to proceed with the Chaffee County Public Trustee Sale Number 14-0239 currently scheduled for August 20, 2014. The Order Authorizing Sake does not expire, nor does it become void if the foreclosure sale is withdrawn. Nothing in C.R.S. § 38-38-100.3 et seq. or in C.R.C.P. 120 requires a new Order Authorizing Sale be submitted to the respective Public Trustee on a restarted foreclosure.

161. On August 18, 2014, the State District Court granted Bank of America's motion to dismiss.

162. The State District Court further ordered "that the Order Authorizing Sale granted on August 2, 2012 in case number 2012CV33 remains valid to proceed with the foreclosure sale of the property located at 9095 County Road 120, Salida, Colorado 81201."

163. On September 8, 2014, Janeway filed a Withdrawal of Notice of Election and Demand for Sale by Public Trustee, Sale Number 14-0239, and recorded it with the clerk and recorder at reception number 415941.

164. On April 16, 2015, a Joseph Luis Rosario, purporting to act as the authorized agent of Bank of America, executed an instrument, for value received, assigning the Deed of Trust to Fannie Mae "with the note(s) and obligation therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust," recorded with the clerk and recorder at reception number 419742.

165. Thereafter, on August 27, 2015, Medved by Attorney Holley Decker, sent a letter to Ms. Haney, which states, in pertinent part:

> Please be advised that our law firm represents FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, and they have instructed us to commence foreclosure proceedings on the [Property]…As of 8-27-2015, the amount of the debt on this loan is $149,982.64.

166. The next day, on August 28, 2015, Attorney Decker sent a letter to Ms. Haney, which states, in pertinent part:

> Our firm represents SETERUS, INC. on the above referenced loan concerning 9095 County Rd 120, Salida, CO 81201. You are receiving this notice pursuant to C.R.S. § 38-38-102.5. There are certain loss mitigation possibilities that you may qualify for to help avoid foreclosure action.

167. On October 1, 2015, Medved, through Jolene Guignet, Esq. (fka, Kaminski), initiated a fifth non-judicial foreclosure with the Public Trustee, referenced under file # 15-0279, by filing, among other things, a referral letter, a Certification by Qualified Holder Pursuant to 38-38-101 CRS (1)(b)(II) and(c)(II), and an alleged "true and correct copy of the original evidence of debt," entitled NOTE (Ex. 8).

168. Attorney Guignet represented that the holder of the original evidence of debt was Fannie Mae.

169. The copy of the evidence of debt attached to Attorney Guignet's Certification by Qualified Holder was not a copy of the original NOTE.

170. Although the attached copy contained the blank endorsement from Countrywide, Attorney Guignet was not in possession of the original evidence of debt at the time of her certification of October 1, 2015.

171. The copy of the evidence of debt attached to Attorney Guignet's Certification by Qualified Holder is a copy of a copy, and not a copy of the original instrument.

172. On Oct 21, 2015, Fannie Mae, through Medved by Attorney Guignet, filed a Verified Motion for Order Authorizing Sale Pursuant to Rule 120 in the State District Court, referenced under Case No. 2015CV30044.

173. The verified motion included the Certification of Qualified Holder along with the same copy of a copy of the NOTE, which had been previously submitted to the Public Trustee.

174. Ms. Haney, through counsel, filed a verified response, challenging the standing of Fannie Mae as the holder of an evidence of debt and real party in interest.

175. On March 8, 2016, Fannie Mae, through Medved by Attorney Guignet, filed a motion for absentee testimony, which contained a copy of the NOTE with the blank endorsement from Countrywide as an exhibit.

176. On March 31, 2016, at the Rule 120 hearing, Attorney Guignet stated:

> I represent Fannie Mae who purchased this loan I believe in 2015. The reason we cannot proceed with the Bank of America as is, is because Bank of America doesn't own—is not the holder of the note anymore.

Reporter's Transcript (3/31/16 Rule 120 Hearing), p. 16, ll. 12-16 (Ex. 9).

177. At the hearing, a foreclosure litigation corporate representative from Seterus, Herbie Romero, testified that:

a. Seterus is the servicer of the loan;

b. Fannie Mae is the "rightful owner, holder of this loan"

c. Fannie Mae became "the holder and constructive holder of the loan" on February 1, 2008;

d. Fannie Mae purchased the loan and "became the rightful owner of this loan and through their attorney in fact, or through their servicing agent, have maintained constructive possession of the note ever since February 1st of 2008;"

Reporter's Transcript (3/31/16 Rule 120 Hearing), p. 27-28, ll. 18-25, 1-17 (Ex. 9).

178. Mr. Romero testified that Fannie Mae doesn't securitize their loans and does not have trusts.

179. As to how Fannie Mae came into possession of the NOTE six days prior to its execution by Mr. Fenstemaker, the Mr. Romero testified:

> Well, the other thing about physical possession, I don't know. Because I didn't work for Seterus on or near that date of February 1, 2008. I don't know. But what I can tell you what I have been advised, based on our training, is that Fannie Mae has always had control and possession of these notes. And again, that's through their foreclosure firm which they retained or through their servicing agent; which performed the duties, the day-to-day operation of the loan. As far as physical possession, I don't believe I can draw a legal conclusion to that question. I don't know that specifically, because I wasn't there at [the] time of the event. My records indicate that Fannie Mae became the owner and in some cases, Fannie Mae knows they're going to buy a group of loans prior to the completion of the origination of those loans. For this particular note, I don't have the specifics as to why my records indicate six days prior to the actual origination of this loan. But we only service for Fannie Mae. So I don't have a reason to doubt that the record would be insufficient or inaccurate and we're only a servicer for Federal National.

Reporter's Transcript (Rule 120 Hearing), pp. 31-32, ll. 18-25, 1-15 (Ex. 9).

180. Thereafter, the following colloquy ensued between the witness and counsel for Ms. Haney:

> Q: Okay. But focus on my question. It is fair to say that you cannot testify that Fannie Mae ever had physical possession of this note?

A: I don't know the date that Fannie Mae acquired for physical possession.

> Q: Or for that matter, ever?
>
> A: Well Fannie Mae—well, I can tell you that based on my Bailee letter record…that Seterus was in possession from the custodian, which was Fannie Mae's custodian, as of December 1st of 2015.
>
> Q: December 1, 2015?
>
> A: That is correct…Prior to that, Bank of America had possession through their Bailee letter, which is a part of the record that was integrated to the boarding process of this loan, as of…February 1st, 2008. Bank of America showed possession as well for Fannie Mae.
>
> Q: February, what?
>
> A: February 1st, 2008.
>
> Q: So on February 1st, 2008, six days before the note was executed, two entities; one, a private entity, Bank of America possessed the note. Is that what you're saying?
>
> A: They possessed it most likely on behalf of Federal National, the investor of the loan—were the servicing agent for Federal National, as is Seterus.

Reporter's Transcript (Rule 120 Hearing), pp. 33-34, ll. 11-25, 1-15 (Ex. 9).

181. Mr. Romero confirmed Fannie Mae did not possess the note at the time of filing its certification of qualified holder and verified motion with the state district court, and testified as follows:

> Q: [D]o you know when [Fannie Mae] they took physical possession of the note?

A: No, I do not. I don't know when Fannie Mae took physical possession of the note. No, I do not.

Q: And do you know whether any other entity has taken physical possession of the note since February 1, 2008?

A: Yes.

Q: Who?

A: Seterus.

Q: Seterus?

A: Fannie Mae's authorized servicing agent.

Q: Okay. So you are aware of one other entity that has taken possession of the note and that would be the company you work for; is that right?

A: That's correct. Would have controllable possession. That possession was acquired on a referral when the loan (indiscernible) went into foreclosure, we referred to Medved, Dale, Decker and Deere, LLC.

Q: When was that?

A: That was the company—

Q: When was that?

A: December 1st, 2015.

Reporter's Transcript (3/31/2016 Rule 120 Hearing), pp. 63-64, ll. 21-15, 1-18 (Ex. 9).

182. At the hearing, Mr. Romero confirmed, in pertinent part:

Q: So, your records indicate that Seterus took physical possession of the note on or about December 1, 2015; is that right?

A: Yes.

Q: And you're indicating that Seterus got the note from another entity called New York Bank Mellon—New York Mellon Bank?

A: No. Bank—I don't know the exact name of the custodian. I don't know why it's relevant. Nonetheless, we have authorization to communicate with Fannie Mae' custodian. And in the event we have to provide original

> documents to a foreclosure firm, we request them from Fannie Mae's custodian. Fannie Mae's custodian is Bank of New York Mellon…The Bailee letter, that is my indication based on my training working at Seterus, that when I see a Bailee letter within—in the depository records for this loan, is representation that we at some point acquired the original note from Fannie Mae's custodian. It went to Beaverton, Oregon where our collateral department is and was scanned, held in our vault and then subsequently shipped via Bailee letter to the respective foreclosure firm. That is the only time in the Seterus' possession that they would have or held that original note. But they would be doing it on behalf and are authorized and delegated requirements pursuant to Fannie Mae.

<u>Reporter's Transcript (3/31/2016 Rule 120 Hearing)</u>, pp. 68-69, ll. 15-25, 1-19 (Ex.9).

183. Mr. Romero did not know when the blank endorsement from Countrywide was placed on the instrument.

184. Thereafter, the matter was continued to proceed on April 14, 2016.

185. Before the second hearing, Ms. Haney filed motion to dismiss for lack of standing and subject matter jurisdiction.

186. At the continued hearing, Ms. Haney called the notary who acknowledged Attorney Guignet's Certification of Qualified Holder that contained a copy of the evidence of debt with the blank endorsement from Countrywide.

187. This same notary acknowledged the signature of Attorney Guignet in her verified motion, which included a copy of the NOTE, with the blank endorsement from Countrywide.

188. "For many uses, a copy properly certified by a notary is as acceptable as the original of a document, and some of these uses require multiple certified copies." Colorado Secretary of State, *Notary Handbook*, p. 12.

189. To make a certified copy, the notary must:

> See the *original* document [C.R.S. 12-53-120 (1)]. A notary is not permitted to make certified copies of copies, no matter how 'official' those copies may look.

190. At the hearing, the notary was unable to verify that the note attached to the certification of qualified holder was a true and correct copy of the evidence of debt.

191. The notary further testified that she did not compare the original NOTE with the copy attached to Fannie Mae's verified motion for order authorizing sale.

192. During the continued hearing, the following colloquy ensued between the notary and counsel for Ms. Haney:

> Q. And are you aware that documents to start a foreclosure are filed with the Public Trustee before they're filed in court?
>
> A. I don't know anything about foreclosures. I work in the bankruptcy department.
>
> Q. Okay. Well you signed your signature twice on this foreclosure; is that right?
>
> A. I verified that the attorney signed the document that she gave me.
>
> Q. Okay. In the certification of qualified holder it says on the document that a true and correct copy of the evidence of debt is attached to the certification by qualified holder. Can you attest that a true and correct copy of the evidence of debt was attached to the certification by qualified holder?
>
> A. I personally cannot attest to that.
>
> Q. Did you see and handle the original document, which has been given to the court before signing the certification?
>
> A. No. I was not asked to do that.

Reporter's Transcript (4/14/2016 Rule 120 Hearing), p. 17, ll. 15-19 (Ex. 10).

193. When asked about her firm's policy and procedure with regard to these types of documents, the notary testified:

> …I don't know a darn thing about foreclosures. I don't know any of the process, none of it. I've never worked in that before. And when I signed the documents he's referring to, per my notary commission in my capacity, I worked under [C.R.S.] 12-55-110. I have no idea what he's talking about with certified documents or originals. I don't know what he's talking about. I never handled anything like that.

<u>Reporter's Transcript (4/14/2016 Rule 120 Hearing)</u>, p. 17, ll. 15-19 (Ex. 10).

194. During closing arguments, Attorney Guignet stated, in part:

> [T]hese are living documents. It was sent to our office. The custodian worked the way Fannie Mae intended it to work. They hold the note and can send it when someone challenges standing. We have that today. There's been no argument that that's not the original note.

<u>Reporter's Transcript (4/14/2016 Rule 120 Hearing)</u>, p. 17, ll. 15-19 (Ex. 10).

195. At the end of the second hearing, the following colloquy ensued between counsel for Ms. Haney and the state district court:

> [Court]: …All right, is there anything else you need to say [Counsel]?
>
> [Counsel]: Well, we've come this far. I'd like [counsel for Fannie Mae] to certify that she had the original in her hand on October 1, 2015.
>
> [Court]: Well I'm not going to have her testify at a hearing. And if that's needed in some other proceeding, you'll have to get it that way, but [the attorney for the holder] is not a witness at this hearing.

<u>Reporter's Transcript (Rule 120 Hearing)</u>, pp. 32-33, ll. 20-25, 1-3 (Ex.10).

196. After the hearing, Ms. Haney demanded the tendered "original note" be filed with the Public Trustee.

197. The State District Court denied her request and returned it to Attorney Guignet.

198. On April 18, 2016, the State District Court determined Ms. Haney's motion to dismiss for lack of standing and subject matter jurisdiction was moot.

199. On April 18, 2016, the State District Court issued an order authorizing sale of the Property.

200. On May 2, 2016, Ms. Haney filed a Petition for Writ of Prohibition with the Supreme Court of the State of Colorado, referenced under 2016SA144.

201. Also on May 2, 2016, Fannie Mae, through Medved by Attorney Decker, executed a Notice of Assignment or Transfer of Evidence of Debt in Public Trustee Sale 15-0279, wherein the document purports to assign the NOTE to Wilmington Savings (Ex. 11).

202. Contemporaneous with the alleged assignment, Wilmington Savings, though Medved by Attorney Decker, placed a credit bid with the Public Trustee for $164,000.00 to purchase the Property, without submission of the original evidence of debt.

203. On May 4, 2016, the Supreme Court of the State of Colorado denied Ms. Haney's Petition for Writ of Prohibition.

204. On May 4, 2016, Wilmington Savings was the highest bidder at public auction.

205. On May 4, 2016, Wilmington Savings, through Medved by Attorney Decker, filed a motion with the State District Court to approve the sale.

206. As of the filing of this complaint, the State District Court has not approved the sale pursuant to C.R.C.P. Rule 120(f).

## VII. CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### FACIAL CHALLENGE TO THE CONSTITUTIONALITY OF COLORADO'S QUALIFIED HOLDER FORECLOSURE STATUTES
### C.R.S. § 38-38-100.3(20) &
### C.R.S. § 38-38-101(1)(b)(II), (6) and (8)

(Against Defendant John Hickenlooper, Governor of State of Colorado)

207. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

208. Ms. Haney has standing to challenge the constitutionality of a Colorado statute as a private citizen and one of the people of the state of Colorado. Ms. Haney is not an agent, employee or public officer of the State of Colorado or the United States.

209. Ms. Haney's standing is created by concrete injuries caused by the conduct of certain Defendants through the use of the indentified unconstitutional statutes.

210. Pursuant to Rule 5.1 of the Federal Rules of Civil Procedure, Ms. Haney has provided notice to Governor Hickenlooper by serving notice upon the Office of the Attorney General for the State of Colorado (Ex. 12).

211. Ms. Haney hereby facially challenges the following Colorado statutes as unconstitutional in violation of the Fifth and Fourteen Amendments to the Constitution:

- C.R.S. § 38-38-100.3(20)
- C.R.S. § 38-38-101(1)(b)(II);
- C.R.S. § 38-38-101(2); and,
- C.R.S. § 38-38-101(6)(b).

212. Colorado law strictly defines a holder of evidence of debt and allows a presumption to extend to a party in possession of an evidence of debt. C.R.S. § 38-38-100.3(10).

213. For this presumption to extend, the statute requires: 1) possession of the evidence of debt made payable to the holder as obligee; 2) possession of the evidence of debt with evidence of assignment to the holder; 3) possession of an evidence of debt endorsed in blank; or, 4) possession of the evidence of debt with authority granted from the original evidence of debt or deed of trust to enforce as agent, nominee or trustee.

214. The statute does not extend the presumptions to a party entitled to enforce without possession of the evidence of debt. *See* C.R.S. § 4-3-301, 309 & 318.

215. C.R.S. § 38-38-100.3(20) creates a special class of persons that include a list of applicable financial institutions and entities of similar import, defined as follows:

> "Qualified holder" means a holder of an evidence of debt, certificate of purchase, certificate of redemption, or confirmation deed that is also one of the following…

216. Ordinarily, the holder of an evidence of debt must submit the original evidence of debt to the public trustee, or post a bond or obtain judgment to initiate foreclosure under a power of sale contained in a deed of trust.

217. Qualified holders may proceed pursuant to C.R.S. § 38-38-101(1)(b)(II).

218. Foreclosure under this provision requires either the qualified holder or its attorney to execute a statement citing the paragraph of section 38-38-100.3(20) under which the holder claims to be a qualified holder and certifying or stating that the copy of the evidence of debt is true and correct. *In Re Miller*, 666 F.3d 1255, 1265 (10th Cir. 2012).

219. If the statute is interpreted as to not require the holder or its attorney to be in possession of the evidence of debt at the time of the certification or statement, the statute is unconstitutional for lack of due process and equal protection.

220. A valid statement of attorney or certification of qualified holder invokes the presumptions afforded to a holder of an evidence of debt in possession pursuant to C.R.S. §§ 38-38-100.3(10).

221. Presumptions which allow the establishment of facts without evidence supported by testimony of a competent fact witness, violate the cause and controversy requirements of Article III, Section 2 of the Constitution, and the Fifth and Fourteenth Amendments, thereto.

222. Here, every foreclosure against Ms. Haney was prosecuted through the use of a copy of a copy of an evidence of debt.

223. Rule 120 of the Colorado Rules of Civil Procedure requires a verified motion with a copy of the instrument.

224. C.R.S. § 38-38-101(1)(b)(II) requires the attorney to execute a statement "citing the paragraph of section 38-38-100.3(20) "under which the holder claims to be a qualified holder and certifying or stating that the copy of the evidence of debt is true and correct."

225. When proceeding under C.R.S. § 38-38-101(1)(b)(II) without a copy of the actual evidence of debt, as certified by the holder or stated by its attorney, the foreclosing party has no standing to invoke the jurisdiction of a state district court.

226. If the statute creates a class of persons who can invoke the jurisdiction of a state district court without meeting the traditional standards of standing, the statute is unconstitutional for lack of due process.

227. If the statute creates a class of persons who can invoke the jurisdiction of a state district court by submitting a copy of a copy, the statute is unconstitutional for lack of due process and equal protection.

228. Proceedings pursuant to Rule 120 are not adversarial or final, and no appeal may be taken to review the order.

229. This problem is compounded by the secondary market and securitization practices of the same entities defined as qualified holders, which has been established by the U.S. Government and its agencies as faulty, defective and in many instances fraudulent and unlawful.

230. The function of a standard of proof, as that concept is embodied in the Due Process Clause and realm of fact finding, is to instruct the fact finder concerning the degree of confidence society thinks he should have in the correctness of factual conclusions in a particular adjudication. *Addington v. Texas*, 41 U.S. 418 (1979).

231. The use of a copy of a copy by a qualified holder avoids the bond required for a lost instrument. C.R.S. § 38-38-101(1)(b)(I). By allowing a qualified holder to submit a copy of a copy of an evidence of debt without attestation of its contents and quality, the qualified holder is completely released from the necessity of posting a surety bond if in fact the instrument is lost—assuming the qualified holder can at least find one old photocopy or scan of the document.

232. The use of a copy submitted with a statement of attorney for the holder removes a respondent's ability to confront the evidence. Even if a homeowner has a good faith basis to believe that the attorney for the holder did not have possession of the evidence of debt at the time of the statement, no state district court is going to allow a party to call opposing counsel—and in the case of Ms. Haney, even upon request, the State District Court would not enquire from the bench as to whether the alleged attorney for the holder had possession of the instrument at the time of her statement.

233. In striking down an Illinois statute for lack of due process, the Supreme Court of the United States stated:

> The establishment of prompt efficacious procedures to achieve legitimate state ends is a proper state interest worthy of cognizance in constitutional adjudication. But the Constitution recognizes higher values than speed and efficiency. Indeed, one might fairly say of the Bill of Rights in general, and the Due Process Clause in particular, that they were designed to protect the fragile values of a vulnerable citizenry from the overbearing concern for efficiency and efficacy that may characterize praiseworthy government officials no less, and perhaps more, than mediocre ones.

*Stanley v. Illinois*, 405 US 645, 656 (1972).

234. A statute creating a presumption which operates to deny a fair opportunity to rebut it violates the due process clause of the Fourteenth Amendment. *Vlandis v. Kline*, 412 US 441, 446 (1973).

235. C.R.S. § 38-38-101(2), states:

> **Foreclosure by qualified holder without original evidence of debt, original or certified copy of deed of trust, or proper indorsement.**
>
> (a) A qualified holder, whether acting for itself or as agent, nominee, or trustee under section 38-38-100.3(20), that elects to foreclose without the original evidence of debt pursuant to subparagraph (II) of paragraph (b) of subsection (1) of this section, or without the original recorded deed of trust or a certified copy thereof pursuant to subparagraph (II) of paragraph (c) of subsection (1) of this section, or without the proper indorsement or

> assignment of an evidence of debt under paragraph (b) of subsection (1) of this section shall, by operation of law, be deemed to have agreed to indemnify and defend any person liable for repayment of any portion of the original evidence of debt in the event that the original evidence of debt is presented for payment to the extent of any amount, other than the amount of a deficiency remaining under the evidence of debt after deducting the amount bid at sale, and any person who sustains a loss due to any title defect that results from reliance upon a sale at which the original evidence of debt was not presented. The indemnity granted by this subsection (2) shall be limited to actual economic loss suffered together with any court costs and reasonable attorney fees and costs incurred in defending a claim brought as a direct and proximate cause of the failure to produce the original evidence of debt, but such indemnity shall not include, and no claimant shall be entitled to, any special, incidental, consequential, reliance, expectation, or punitive damages of any kind. A qualified holder acting as agent, nominee, or trustee shall be liable for the indemnity pursuant to this subsection (2).
>
> (b) In the event that a qualified holder or the attorney for the holder commences a foreclosure without production of the original evidence of debt, proper indorsement or assignment, or the original recorded deed of trust or a certified copy thereof, the qualified holder or the attorney for the holder may submit the original evidence of debt, proper indorsement or assignment, or the original recorded deed of trust or a certified copy thereof to the officer prior to the sale. In such event, the sale shall be conducted and administered as if the original evidence of debt, proper indorsement or assignment, or the original recorded deed of trust or a certified copy thereof had been submitted at the time of commencement of such proceeding, and any indemnities deemed to have been given by the qualified holder under paragraph (a) of this subsection (2) shall be null and void as to the instrument produced under this paragraph (b).
>
> (c) In the event that a foreclosure is conducted where the original evidence of debt, proper indorsement or assignment, or original recorded deed of trust or certified copy thereof has not been produced, the only claims shall be against the indemnitor as provided in paragraph (a) of this subsection (2) and not against the foreclosed property or the attorney for the holder of the evidence of debt. Nothing in this section shall preclude a person liable for repayment of the evidence of debt from pursuing remedies allowed by law.

236. This indemnification clause only applies to qualified holders that do not submit the original evidence of debt prior to the sale. Its purpose purports to protect a person defending a subsequent claim from an entity in actual possession of the evidence of debt.

237. In fact, its real purpose is to protect a qualified holder and its attorney from liability associated with using a copy of an evidence of debt. Its essence is to mollify judicial scrutiny as to whether the alleged qualified holder is the real party in interest.

238. The indemnification clause as outlined in C.R.S. § 38-38-101(2) is vague and unenforceable, except in the limited context of a third-party holder suing under an original evidence of debt for damages "other than the amount of a deficiency remaining under the evidence of debt after deducting the amount bid at sale," or any other "person who sustains a loss due to any title defect that results from reliance upon a sale at which the original evidence of debt was not presented."

239. The indemnification clause contemplates situations, in which a qualified holder proceeds with a copy of the evidence of debt pursuant to C.R.S. § 38-38-101(1)(b)(II).

240. The indemnification clause further allows for the use of a copy throughout the process, including sale, without ever having to submit the original evidence of debt. This allows a qualified holder to use a copy of an evidence of debt to submit a credit bid, which includes the costs of collection and attorney fees to either purchase the property at sale, or be reimbursed for the total amount by a higher bidder.

241. Thus, the indemnification clause creates a justification for a qualified holder to submit a copy of a copy, without ever possessing the original, obtaining a judgment or posting a bond.

242. Other benefits of being a qualified holder are outlined in subsequent subsections. C.R.S. § 38-38-101(6) states:

**Indorsement or assignment.**

(a) Proper indorsement or assignment of an evidence of debt shall include the original indorsement or assignment or a certified copy of an indorsement or assignment recorded in the county where the property being foreclosed is located.

(b) Notwithstanding the provisions of paragraph (a) of this subsection (6), the original evidence of debt or a copy thereof without proper indorsement or assignment shall be deemed to be properly indorsed or assigned if a qualified holder presents the original evidence of debt or a copy thereof to the officer together with a statement in the certification of the qualified holder or in the statement of the attorney for the qualified holder pursuant to subparagraph (II) of paragraph (b) of subsection (1) of this section that the party on whose behalf the foreclosure was commenced is the holder of the evidence of debt.

243. These statutes completely obfuscate a qualified holder's obligation to present a proper indorsement or assignment. As long as a qualified holder presents the original evidence of debt "or a copy thereof," accompanied by a certification or statement pursuant to C.R.S. § 38-38-101(b)(1)(II), the evidence of debt "shall be deemed to be properly indorsed or assigned."

244. Fannie Mae, Bank of America, Castle Group, Medved, Seterus and Wilmington Savings, and each of them, interpret the phrase "original evidence of debt or a copy thereof" to include the presentation of a copy of an older copy of the evidence of debt.

245. If said Defendants are right, the statute is unconstitutional for lack of due process and equal protection.

246. If said Defendants are wrong, those same Defendants have wrongfully prosecuted tens of thousands of foreclosures, including Ms. Haney's, all over the state of Colorado.

247. Due to the herein identified unconstitutional statutes, Ms. Haney has suffered a loss of rights and damages, and is entitled to declaratory judgment that the above-referenced Colorado statutes are unconstitutional.

## SECOND CLAIM FOR RELIEF

### VINDICATION OF RIGHTS FOR VIOLATIONS UNDER COLOR OF LAW
### 42 U.S.C. § 1983, 1985, 1988

(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway Firm, Medved, Seterus, Public Trustee and State District Court)

248. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs, as though fully contained herein.

249. At all times relevant herein, Ms. Haney had certain inalienable and protected rights guaranteed by the Constitution, which include the right not to be deprived of her property without due process.

250. Government conduct depriving a person of life, liberty, or property must, as a matter of due process, be implemented in a fair manner.

251. The Defendants listed herein are federal instrumentalities and state actors subject to 42 U.S.C. § 1983, 1985, and 1988.

252. The Defendants, and each of them, are responsible for the actions of their employees, agents, or attorneys under the legal doctrine of *Respondeat Superior*.

253. Castle Group and Medved and its attorneys were at all times material acting as agents for Fannie Mae, Bank of America, Seterus and Wilmington Savings.

254. Castle Group and Medved and its attorneys were acting with knowledge that the statements of qualified holder being filed in pubic offices across the state of Colorado were materially false and misleading.

255. Castle Group and Medved and its attorneys had a duty of candor to the tribunal and full disclosure under their rules of professional conduct, and chose to continue to conceal their actions from the proper authorities.

256. Acting under the color of law, Defendants violated Ms. Haney's rights, privileges, and immunities secured by the Constitution, guaranteed by the Fifth and Fourteenth Amendments.

257. The Defendants and each of them participated in legal actions resulting in court orders for the sale of the Property based on misrepresentations concerning the status of the alleged qualified holders and possession of the evidence of debt.

258. The Defendants and each of them used electronic communication and mail to send and receive documents to and from the clerk and recorder, Public Trustee, and State District Court.

259. These state public entities relied on the qualified holders and their attorneys to provide truthful and accurate documents sufficient to sustain Rule 11 of the Colorado Rules of Civil Procedure.

260. However, said state entities failed to properly investigate the conduct of the foreclosing Defendants after repeated notice from Ms. Haney.

261. At all relevant times herein, said foreclosing Defendants and their attorneys engaged in a pattern of racketeering and obfuscation, which Ms. Haney only recently discovered has been conducted from the beginning by Bank of America on behalf of Fannie Mae.

262. Upon information and belief, the NOTE was sold and pledged into the secondary market before execution by Mr. Fenstemaker.

263. After his inevitable default, the servicer of the loan, BAC, twice attempted foreclosure.

264. In both cases, BAC, through Castle Group, uttered a counterfeit copy of the NOTE and submitted it as a "true and correct copy of the evidence of debt." None of the first copies had a blank endorsement from Countrywide. Further, the blank endorsement is undated and was undoubtedly placed on the document by a robo-singer—not the signatory.

265. After merging with BAC, Bank of America attempted two more times to foreclose. In those cases, Castle Group again uttered a counterfeit copy of the NOTE and invoked the jurisdiction of the State District Court without possession of the evidence of debt.

266. A Rule 120 hearing is not structured to present false evidence to obtain jurisdiction, to later appear with a materially different document.

267. Disclosure and presentment of the blank endorsement from Countrywide would have revealed the evidence of securitization. Accordingly, BAC, Bank of America and Castle Group concealed the information in every motion for order authorizing sale they filed with the State District Court.

268. Seterus, Fannie Mae, Medved and Wilmington Savings engaged in the same and similar conduct by filing a fifth foreclosure against the Property, without possession of the NOTE, by submitting a copy of copy of the NOTE with a certification filed under oath by Medved.

269. As a result of Defendants' collusive, concerted, unlawful and unconstitutional conduct, Ms. Haney was deprived of her right to substantive due

process of law, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

270. As a result of Defendants' collusive, concerted, unlawful and unconstitutional conduct, Ms. Haney was deprived of her right to procedural due process of law, in violation of the Fifth and Fourteenth Amendments of the U.S. Constitution.

271. As a direct and proximate cause of the Defendants' improper assertion of their status as a qualified holder and abuse of the presumptions established pursuant to C.R.S. § 38-38-100.3(10), Ms. Haney has suffered damages, injuries and losses.

272. Said Defendant's conduct resulted in a denial of Ms. Haney's due process rights through the Public Trustee and State District Court's reliance on the aforementioned misrepresentations and false evidence.

273. Ms. Haney has incurred considerable legal expense which would not otherwise have been incurred, has suffered the loss of confidence in and feelings of betrayal by the justice system, and emotional scarring—all compensable as emotional distress, post traumatic stress, and other damages.

## THIRD CLAIM FOR RELIEF

### REQUEST FOR DECLARATORY JUDGEMENT
### AS TO THE STANDING OF FANNIE MAE IN THE PENDING MATTER

(Against Defendant Fannie Mae, Medved and Wilmington Savings)

274. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs, as though fully contained herein.

275. C.R.C.P. 120(a) states, in pertinent part:

> **Motion; Contents.** Whenever an order of court is desired authorizing a sale under a power of sale contained in an instrument, any interested person or someone on such person's behalf may file a verified motion in a district court seeking such order. The motion shall be accompanied by a copy of the instrument containing the power of sale, shall describe the property to be sold, and shall specify the default or other facts claimed by the moving party to justify invocation of the power of sale.

276. "The provisions of Rule 120 must be strictly complied with by one seeking foreclosure under a power of sale through the public trustee." *Dew v. District Court*, 648 P.2d 662, 664 (Colo. 1982).

277. "Although the purpose of Rule 120 was originally intended to protect members of the military service from prejudice resulting from foreclosure proceedings commenced against them during their period of military service…the scope of the rule has been extended by case law to provide due process protections with respect to the taking and public sale of a real property interest of a debtor under a deed of trust." *Goodwin v. District Court*, 779 P.2d 837, 840 (Colo. 1989).

278. "Implicit in Rule 120 is the requirement that the party seeking an order of sale have a valid interest in the property." *Id*. at 843.

279. "The real party in interest is that party who, by virtue of substantive law, has the right to invoke the aid of the court in order to vindicate the legal interest in question. *Id*.

280. "Unless the 'real party in interest' defense is considered at a Rule 120 hearing, any order for sale might well result in the sale of property in favor of a party who has no legitimate claim to the property at all." *Id*.

281. In *National Advertising Co. v. Sayers*, this Court held a plaintiff did not satisfy the "real party in interest" requirement, since he had failed to prove an assignment of the contract claim in question. 356 P. 2d 483 (Colo. 1960).

282. Here, Fannie Mae claimed to be the holder of an evidence of debt at the time of the filing of the foreclosure.

283. Recently, the 10th Circuit Court of Appeals stated, in part:

> Article 38 defines a "holder of an evidence of debt" as a person "*in actual possession of*" or "*entitled to enforce* an evidence of debt." Colo.Rev.Stat. § 38-38-100.3(10) (emphasis added). Section 38-38-100.3(10) lists a number of presumptive holders of a debt presumed to be the "holder of an evidence of debt." Each of these requires *possession* of the evidence of debt…See id. § 38-38-100.3 (a)-(d).

*In Re Miller*, 666 F.3d 1255, 1264 (10th Cir. 2012).

284. "In the case of bearer paper such as the Note, physical possession is essential because it constitutes proof of ownership and a consequent right to payment." *Id*. "Possession is an element designed to prevent two or more claimants from qualifying as holders who could take free of the other party's claim of ownership." *Georg v. Metro Fixtures Contractors, Inc.*, 178 P.3d 1209, 1213 (Colo. 2008). "With rare exceptions, those claiming to be holders have physical ownership of the instrument in question." *Id.*

285. As in *In Re Miller*, Fannie Mae claimed to be the holder pursuant to C.R.S. § 38-38-101(1)(b)(II):

> But foreclosure under this provision requires either the bank or its attorney to execute a statement "citing the paragraph of section 38-38-100.3(20) under which the holder claims to be a qualified holder and certifying or stating that the copy of the evidence of debt is true and correct"…

*In Re Miller*, 666 F.3d 1255, 1265 (10th Cir. 2012).

286. Here, the evidence establishes that, at best, a third-party servicer obtained possession of the NOTE after December 1, 2015. Tr. 3/31/16, pp. 63-64, ll. 21-15, 1-18. After that, the NOTE was sent to foreclosure counsel. *Id*., pp. 68-69, ll. 15-25, 1-19.

287. The evidence proves neither Fannie Mae, nor its attorney, had possession of the evidence of debt at the time of the initiation of the foreclosure with the Public Trustee and the filing of its verified Rule 120 motion in State District Court.

288. Nonetheless, Fannie Mae, through Medved, presented a certification of qualified holder with the Public Trustee and District Court and attached a copy of copy of the NOTE.

289. A certification of a copy of a copy fails for lack of firsthand knowledge. C.R.E. 901(b)(1).

290. Neither can a copy be authenticated by reviewing its contents, unless the original is available for inspection. C.R.E. 901(b)(4). *See also In Re Marriage of Plummer*, 709 P. 2d 1388, 1391 (Colo. App. 1985).

291. If it be true that a party in any way misrepresented the facts, either actively or merely by failure to reveal them, then it follows as a matter of course that a resulting order is invalid. *Weber v. Williams*, 324 P.2d 365, 369 (1958)(*applying Coppinger v. Coppinger*, 274 P.2d 328, 330 (Colo. 1954).

292. When proceeding pursuant to Title 38, without bond or judgment, possession of the evidence of debt is mandatory. Without it, the moving party lacks standing to initiate a court proceeding.

293. "Standing is determined as of the time the action is brought." *Nova Health Systems v. Gandy*, 416 F.3d 1149, 1154 (10th Cir. 2005).

294. "Standing is a justiciability doctrine that tests a litigant's right to raise legal arguments and claims." *Greenwood Village v. Petitioners*, 3 P.3d 427, 436 (Colo. 2000). *See also Romer v. Board of County Com'rs*, 956 P.3d 566, 572 (Colo. 1998). As this Supreme Court has held:

> The proper inquiry on standing is whether the plaintiff has suffered injury in fact to a legally protected interest as contemplated by statutory or constitutional provisions. If he has not, standing does not exist, and the case must be dismissed. If he does, standing exists, and the case must proceed to judgment on the merits.

*Wimberly v. Ettenberg*, 570 P.2d 535, 537 (Colo. 1977).

295. "The first prong is necessary under the separation of powers doctrine in article III of the Colorado Constitution." *Ainscough v. Owens*, 90 P.3d 851, 855-856 (Colo. 2004). "Without this prong, courts might encroach on the power of the legislature to make prospective laws." *Id.* at 856.

296. "In addition to providing the actual controversy required for courts to constitutionally exercise their power under Article VI of Colorado's constitution, the injury-in-fact requirement ensures a 'concrete adverseness which sharpens the presentation of issues' that parties argue to the courts." *Greenwood Village*, 3 P.3d at 437 (Colo. 2000).

297. "The prudential prong of our standing test requires the plaintiff to demonstrate that the injury he has suffered is to a legally protected right." *Id*.

298. "[S]tanding is a jurisdictional question." *Denver Urban Renewal Authority v. Byrne,* 618 P.2d 1374, 1379 (Colo. 1980).

299. Thus, the "existence of standing necessary to invoke the jurisdiction of our courts depends upon a showing that the action complained of has caused or threatens to cause injury to an interest protected by law. *Id*.

300. "This is a question of whether the plaintiff has a claim for relief under the constitution, the common law, a statute, or a rule or regulation." *Ainscough*, 90 P.3d at 855-856 (Colo. 2004).

301. A jurisdictional defect may be noticed at any stage of an action. *Id*. "If a party lacks standing, the case must be dismissed unless [this Supreme Court's] original jurisdiction can properly be invoked pursuant to the doctrine of in *publici juris*. *Denver Urban Renewal Authority*, 618 P.2d at 1379 (Colo. 1980).

302. Recently, the New Mexico Supreme Court found a bank lacked prudential standing to foreclose because it did not establish an interest in the subject mortgage at the time of filing the suit. *Deutsche Bank National Trust Company v. Johnston*, 2016-NMSC-013, ____P.3d____(2016).

303. In its ruling, the New Mexico Supreme Court stated:

> There are sound policy reasons for requiring strict compliance with the traditional procedural requirement that standing be established at the time of filing in mortgage foreclosure actions. This procedural safeguard is vital because the securitization of mortgages has given rise to a pervasive failure among mortgage holders to comply with the technical requirements underlying the transfer of promissory notes, and more generally the recording of interests in property.

*Id*. at ¶ 21.

304. The New Mexico Supreme Court further concluded:

> [I]t is not presumptuous to require, as do a substantial number of other states, that a company claiming to be a mortgage holder must produce proof that it was entitled to enforce the underlying promissory note prior to the commencement of the foreclosure action…We agree with the Vermont

> Supreme Court, which opined that '[i]t is neither irrational nor wasteful to expect a foreclosing party to actually be in possession of its claimed interest in the note, and have the proper supporting documentation in hand when filing suit.' [*US Bank Nat. Ass'n v. Kimball*, 27 A.3d 1087, 1094 (2011)].

*Id*. at ¶ 23.

305. Although the bank lacked standing to foreclose, the *Deutsche* court found standing was "not jurisdictional" in that particular case "because the cause of action to enforce a promissory note was not created by statute." Id. at ¶ 10.

306. Conversely, Colorado's non-judicial foreclosure procedure is entirely created by statute. C.R.S. § 38-38-100.3, *et seq*. Title 38 defines a "holder of an evidence of debt." C.R.S. § 38-38-100.3(20). To foreclose, the statute requires the holder of an evidence of debt to file certain documents with the public trustee. C.R.S. § 38-38-101(1)(a)-(f). Thereafter, the holder "shall obtain an order authorizing sale from a court of competent jurisdiction to issue the same pursuant to Rule 120 of the Colorado rules of civil procedure." C.R.S. § 38-38-105.

307. This is matter of extraordinary public importance.

308. In Colorado, the legislature has established a simple, non-judicial procedure, through which a party may request the public sale of real property to satisfy a debt.

309. When a party chooses to pursue this remedy, the evidence of debt must be filed with the public trustee, unless the movant is a qualified holder.

310. A qualified holder is a class of persons allowed by law to submit a copy of the evidence of debt. Nonetheless, this class of persons must be the holder of an evidence of debt, as that term is defined in the statute—or post a bond or obtain a civil judgment.

311. To invoke the jurisdiction of a state district court, a party must have standing.

312. In a Rule 120 foreclosure, status as the holder of an evidence of debt creates the standing.

313. Here, Fannie Mae, through Medved, advised the State District Court that it purchased the loan in 2015.

314. On or about October 1, 2015, Fannie Mae presented a copy of a copy of the NOTE to the Public Trustee.

315. Thereafter, on or about October 21, 2015, Fannie Mae, through Medved, filed its Verified Motion for Order Authorizing Sale.

316. At hearing, Fannie Mae's own witness testified that Seterus did not obtain possession of the note until 40 days after Fannie Mae had filed its motion in State District Court.

317. Despite the implications created by the inability of an attorney to certify a copy of a negotiable instrument as true and correct without possession of the document, the evidence is clear that Fannie Mae was not the holder of an evidence of debt at the time of the initiation of the foreclosure.

## FOURTH CLAIM FOR RELIEF

### REQUEST FOR DECLARATORY JUDGEMENT
### AS TO THE SUBJECT MATTER JURISDICTION OF THE STATE COURT
(State District Court)

318. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs, as though fully contained herein.

319. Due to the lack of standing of Fannie Mae to foreclose, the State District Court lacked subject matter jurisdiction to proceed.

320. The issue of standing and the trial court's jurisdiction is never moot.

321. Therefore, the State District Court erred by failing to properly consider the issue in resolving the Rule 120 motion.

322. Proceedings pursuant to Rule 120 are not adversarial or final, and no appeal may be taken to review the order. *Hastings v. Security Thrift & Mortgage Co.*, 357 P.2d 919, 921 (1960). *See also In Re Miller*, 666 F.3d 1255, 1262 (10th Cir. 2012).

323. However, when a party lacks standing in a statutorily created cause of action, the district lacks subject matter jurisdiction to grant relief.

324. Without the ability to appeal, Ms. Haney's only other option is to file an independent action for declaratory judgment challenging the jurisdiction of the district court.

325. The granting of an order authorizing sale shall be without prejudice to the right of any person aggrieved to seek injunctive or other relief any court of competent jurisdiction. C.R.C.P. Rule 120(d).

326. A sale held without an order authorizing sale issued in compliance with C.R.S. § 38-38-105(2)(a) is invalid.

## FIFTH CLAIM FOR RELIEF

### COMMON LAW FRAUD

(Against Defendants Fannie Mae, Bank of America, Castle Group,
Janeway, Medved, Seterus, Wilmington Savings and Mr. Fenstemaker)

327. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs, as though fully contained herein.

328. At all times relevant times hereto, the Defendants and each of them made false representations of material fact.

329. At all times relevant hereto, when making the representations, the Defendants and each of them knew that their statements were false.

330. At all times relevant hereto, the persons to whom the misrepresentations were made were ignorant of the falsity.

331. At all times relevant times hereto, the Defendants and each of them made misrepresentations with the intention that it be acted upon.

332. At all times relevant times hereto, Countrywide's reliance on the misrepresentations of Mr. Fenstemaker resulted in damage to Ms. Haney.

333. At all times relevant times hereto, the Public Trustee and State District Court's reliance on the misrepresentations of the remaining said Defendants resulted in damage to the plaintiff.

## SIXTH CLAIM FOR RELIEF

### FRAUDULENT CONCEALMENT

(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway, Medved and Seterus)

334. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

335. At all times relevant times hereto, the Defendants and each of them concealed material facts that in equity and good conscience should have been disclosed.

336. At all times relevant hereto, when making the representations, the Defendants and each of them knew that material facts were being concealed.

337. At all times relevant hereto, the Public Trustee, State District Court and Ms. Haney were ignorant of the facts being concealed.

338. At all times relevant times hereto, the Defendants and each of them concealed certain facts with the intention that the persons being misled act upon on other averments than those being concealed.

339. At all times relevant times hereto, the Public Trustee and State District Court's reliance on other representations than those being concealed, resulted in damage to Ms. Haney.

## SEVENTH CLAIM FOR RELIEF

### VIOLATION OF COLORADO'S FAIR DEBT COLLECTION PRACTICES ACT
### C.R.S. § 12-14-107(1)(b)(I)

(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway, Medved and Seterus)

340. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

341. As set forth in detail above, the Defendants herein named used false, deceptive or misleading representations, including false representations of the character, status, or amount of any debt, in connection with the collection of debt relating to the above-referenced foreclosures on the Property by repeatedly filing copies of copies of an evidence of debt with the Public Trustee and State District Court, and claiming to be the holder of an evidence of debt without possession of the same.

342. As a direct and proximate cause of the conduct of the named Defendants' violation of section 12-14-107(1)(b)(I) of Colorado's Fair Debt Collection Practices Act, Ms. Haney has suffered damages, injuries and losses to be determined at trial.

## EIGHTH CLAIM FOR RELIEF

**VIOLATION OF COLORADO'S FAIR DEBT COLLECTION PRACTICES ACT**
**C.R.S. § 12-14-108(1)(f)(I)**
(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway, Medved and Seterus)

343. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

344. As set forth in detail above, the Defendants herein took non-judicial action to effect dispossession of property when there was no present right to possess the Property claimed as collateral through an enforceable security interest.

345. As a direct and proximate cause of the conduct of the named Defendants' violation of section 12-14-108(1)(f)(I) of Colorado's Fair Debt Collection Practices Act, Ms. Haney has suffered damages, injuries and losses to be determined at trial.

## NINTH CLAIM FOR RELIEF

**VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT**
**15 U.S.C. § 1692(e)(2)(A)**
(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway, Medved and Seterus)

346. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs, as though fully contained herein.

347. Ms. Haney is a "consumer" defined by 15 U.S.C.A. § 1692(d) for purposes of a cause of action under 15 U.S.C.A. § 1692(c) or 15 U.S.C.A. § 1692(e)(11).

348. The "debt" arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C.A. § 1692(a)(5).

349. The Defendants herein named are debt collectors as defined by 15 U.S.C. § 1692(a)

350. As set forth in detail above, the Defendants herein named used false, deceptive or misleading representations, including false representations of the character, status, or amount of any debt, in connection with the collection of debt relating to the above-referenced foreclosures on the Property by repeatedly filing copies of copies of an evidence of debt with the Public Trustee and State District Court, and claiming to be the holder of an evidence of debt without possession of the same.

351. As a direct and proximate cause of the conduct of the named Defendants' violation of 15 U.S.C. § 1692(e)(2)(A) of the Fair Debt Collection Practices Act, Ms. Haney has suffered damages, injuries and losses to be determined at trial.

## TENTH CLAIM FOR RELIEF

### VIOLATION OF THE FAIR DEBT COLLECTION PRACTICES ACT
### 15 U.S.C. § 1692(f)(6)

(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway, Medved and Seterus)

352. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs, as though fully contained herein.

353. As set forth in detail above, the Defendants herein named took non-judicial action to effect dispossession of property when there was no present right to possess the Property claimed as collateral through an enforceable security interest.

354. As a direct and proximate cause of the conduct of the named Defendants' violation of 15 U.S.C. § 1692(f)(6) of the Fair Debt Collection Practices Act, Ms. Haney has suffered damages, injuries and losses to be determined at trial.

## ELEVENTH CLAIM FOR RELIEF

### PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

(Against Defendants Fannie Mae, Bank of America, Castle Group, Medved, Seterus, Wilmington Savings, MERS, Public Trustee, State District Court and State of Colorado)

355. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

356. The unlawful and outrageous actions of the foreclosing Defendants, in violation of Ms. Haney's protected right of due process and equality in law, has caused ongoing and imminent threat of the loss of her Property.

357. Bank of America, Fannie Mae, their agents, attorneys and assigns, have been able to avoid the surety and bond requirements of C.R.S. § 38-38-101(1)(b)(I) through the use of a counterfeit notes and the false attestations of Castle Group and Medved.

358. The actions by Bank of America, Fannie Mae, their agents, attorneys and assigns involve several serious irregularities done under pretext of Colorado's Title 38 and Rule 120 foreclosure procedure.

359. Through continued unsafe, unsound practices and continual violations of prior and existing federal consent orders directing Bank of America and Fannie Mae to cease and desist in their deceptive, unsafe and unsound practices, these Defendants, their agents, attorneys and assigns have engaged in falsification, use, and publication of erroneous and misleading documents and pleadings filed with the Public Trustee and State District Court, to effect a foreclosure under a presumption of standing as a holder of evidence of debt.

360. Good cause therefore exists for issuance of a Preliminary Injunction and Permanent Restraining Order, as Ms. Haney will continue to suffer irreparable harm and injury should Defendants not be enjoined and prohibited from their continual efforts to illegally acquire Ms. Haney's property.

## TWELFTH CLAIM FOR RELIEF

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(Against Defendant Fannie Mae, Bank of America, Castle Group, Janeway, Medved, and Seterus)

361. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

362. The conduct of the herein named Defendants and their agents constitutes extreme and outrageous conduct, the result of which has caused severe emotional distress and continued post traumatic stress.

363. Ms. Haney further contends that Defendants and each of them engaged in such conduct either intentionally or with reckless disregard as to the effect on Ms. Haney.

364. Defendants and their agents have continued with their unlawful and bad faith actions over the course of the last six years, which no man or woman should have to endure.

365. Ms. Haney has been required to expend all of her available resources, time, energy and efforts to protect her property from the unlawful actions of the named Defendants and their agents.

366. The stress of the ongoing abuse of Defendants and their agents, has caused a severe physical and emotional toll on Ms. Haney.

367. Defendants herein named and each of them have demonstrated a reckless and wanton disregard for the truth and the fraudulent representations being made by Defendants and their agents.

368. As a direct and proximate result of the conduct of the Defendants herein named, Ms. Haney has suffered daily anxiety, panic and distrust for the judicial and legal process in Colorado.

369. The actions of Defendants and their agents were intentional misrepresentations aimed directly toward judicial and public registry machinery with intention to violate Ms. Haney's rights and to cause intentional infliction of distress.

370. As a direct and proximate cause result of said extreme and outrageous conduct by Defendants and their agents, each of them, Ms. Haney has suffered severe emotional distress.

## THIRTEENTH CLAIM FOR RELIEF

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
(Against Defendant Fannie Mae, Bank of America, Castle Group, Janeway, Medved, and Seterus)

371. Ms. Haney incorporates herein by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

372. The Defendants herein named, and their agents had a continuing affirmative duty to conform to the law, and the rules of ethical and professional conduct, as not to inflict emotional distress on Ms. Haney, and others similarly situated.

373. The claims of the herein named Defendants under the relevant deed of trust were contractual and equitable in nature, which carry with it a duty of good faith and fair dealings, and to seek remedy with clean hands.

374. The Defendants herein named, and their agents have breached that duty by engaging in a pattern of racketeering.

375. As a direct and proximate result of Defendants' negligent conduct, Ms. Haney has suffered and will continue to suffer physical, emotional and mental symptoms as a causal injury in fact that is concrete and particularized.

## FOURTEENTH CLAIM FOR RELIEF
### CIVIL RICO
(Against Defendants Fannie Mae, Bank of America, Castle Group, Janeway Firm, Medved, Seterus)

376. Ms. Haney incorporates by reference all of the allegations contained in the foregoing paragraphs of this Complaint, as though fully contained herein.

377. At all times material hereto, Ms. Haney was a person within the meaning and definition of RICO, pursuant to 18 U.S.C. §1961(3) and §1964(c).

378. At all material times hereto, said Defendants were persons within the meaning of RICO, 18 U.S.C. § 1961(3) and 1962(c).

379. At all material times hereto, Defendants formed an association-in-fact for the purpose of defrauding individuals, such as Ms. Haney, by foreclosing on property, such as the Property owned by Ms. Haney, in which the Defendants did not have possession of the relevant evidence of debt, were not otherwise authorized to foreclose upon Ms. Haney's property, and thus did not have standing to enforce the NOTE through the power of sale contained in the relevant deed of trust.

380. This association was an enterprise within the meaning of RICO, 18 U.S.C. 1961(4).

381. This association-in-fact was and is an "enterprise" within the meaning of RICO, 18 U.S.C. §1961(4).

382. Parties that are known to be part of the enterprise are Fannie Mae, Bank of America, Castle Group, Janeway, Medved and Seterus.

383. Each known party to the enterprise plays a separate and distinct role necessary to keep the public from discerning that it is an enterprise and that one of the enterprises primary concerns is to seize property, launder titles, and maintain a false public perception that the Defendants are injured parties simply attempting to collect a debt.

384. At all times material hereto, this enterprise was engaged in, and its activities affected, interstate and foreign commerce, within the meaning of RICO, 18 U.S .C. §1962 (c).

385. The enterprise employs electronic communication and the United States postal system in order to communicate with homeowners about the foreclosure actions being brought against them and to transfer documents needed to perpetrate fraudulent foreclosures in State District Courts between the members of the enterprise.

386. At all material times hereto, the named Defendants and other unknown parties to the enterprise participated, directly or indirectly, in the conduct of the enterprises affairs through a "pattern of racketeering activity" within the meaning of RICO, 18 U.S.C. §1961(5), or the collection of an unlawful debt in violation of RICO, 18 U.S.C. §1962(c).

387. At all material times hereto, the named Defendants and other unknown parties to the enterprise engaged in "racketeering activity" within the meaning of 18 U.S.C. §1961(1) by engaging in the acts set forth above.

388. Said acts set forth above constitute violations of one or more of the following statutes including but not limited to: 18 U.S.C. § 1341 (Mail Fraud); 18 U.S.C. § 1341 (Wire Fraud); 18 U.S.C. § 1344 (Financial Institution Fraud); 18 U.S.C. § 1951 (Interference with Commerce, Robbery or Extortion); 18 U.S.C. § 1956 (Laundering of Monetary Instruments); 18 U.SC. § 1957 (Monetary Transactions and Property Derived from Specified Unlawful Activity); 18 U.S.C. § 472 (Uttering counterfeit obligations or securities).

389. At all material times hereto, the named Defendants and other unknown parties to the enterprise have committed, aided, or abetted the commission of two or more of these acts of racketeering activity which constitute interstate commerce.

390. The actions of the enterprise always have the same purposes, results, participants, victims and methods of commission.

391. The acts alleged were related to each other by virtue of common participants, a common victim, a common method of commission, and a common purpose and common result of defrauding Ms. Haney and other similarly situated individuals, enriching said Defendants and other conspirators at Ms. Haney's expense, while concealing the fraudulent activities of the conspirators.

392. The continuity of the enterprise is open-ended. The fraudulent conduct by said Defendants has been going on since 2009, and there is every indication that it will extend indefinitely into the future.

393. The enterprise conducted by said Defendants is a systemic victimization that will continue if Ms. Haney had not filed this lawsuit.

394. Discovery will be necessary to identify other specific false representations, time and place they were made, and to identify the persons responsible.

395. As a result of the conduct of said Defendants, and other unknown parties to the enterprise as yet unknown conspirators violations of 18 U.S.C. § 1962(c), Ms. Haney has suffered the loss of her Property, and other damages, including, but not limited to, economic losses, attorney's fees, past, present and future mental pain and suffering.

396. As a result of the above-referenced misconduct, said Defendants are liable to Ms. Haney for her loss in an amount to be determined at trial.

397. Pursuant to RICO, 18 U.S.C. § 1964(c), Ms. Haney is entitled to recover threefold her damages established at trial, plus costs and attorney's fees from said Defendants.

## VIII. PLAINTIFF DEMANDS A TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury on all issues triable by such.

## IX. PRAYER FOR RELIEF

WHEREFORE, AS TO ALL CAUSES OF ACTION, PLAINTIFF PRAYS FOR THE FOLLOWING RELIEF:

a) Assume jurisdiction over the action;

b) Issue declaratory judgment that the above-referenced Colorado statutes are unconstitutional;

c) Issue declaratory judgment that Fannie Mae did not have standing to foreclosure upon the Property and that the resulting order authorizing sale is void;

d) Issue declaratory judgment that the State District Court lacked subject matter jurisdiction to issue an order authorizing sale based upon the lack of standing of Fannie Mae to foreclosure upon the Property, and that as a result the order authorizing sale is void;

e) Award actual damages to be established at trial;

f) Award Plaintiff her reasonable costs and expenses;

g) Award Plaintiff reasonable attorneys' fees;

h) Treble damages and reasonable attorney's fees and costs pursuant to 18USC § 1964(c); and,

i) Award such other actual damages, punitive damages, and any other equitable relief as the Court deems appropriate.

Respectfully submitted on May 27, 2016, by:

*s/ Gary D. Fielder*
Gary D. Fielder, #19757

Address of Plaintiff:
9095 County Road 120
Salida, Colorado